IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01528-RM-MEH

SHANNON SLIWINSKI,

　　Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

　　Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

　　This action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and asserts claims for benefits due under 29 U.S.C. § 1132(a)(1)(B) and for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1). Defendant Aetna Life Insurance Company ("Aetna" or "Defendant") has filed a Partial Motion to Dismiss the second claim for relief. The Court finds that Plaintiff's second claim is impermissibly duplicative of the first and, thus, respectfully recommends that the Partial Motion to Dismiss be granted.

## BACKGROUND

　　Plaintiff Shannon Sliwinski ("Sliwinski" or "Plaintiff") initiated this action on June 23, 2017. Compl., ECF No. 1.

**I.　　Facts**

　　The following are factual allegations made by Sliwinski in the Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

Sliwinski began working for the company Zogenix as a Specialty Account Manager in 2014. Compl. ¶ 9, ECF No. 1. As a part of her employment, Sliwinski was covered by a Long Term Disability Plan (the "Plan"), which is an "employee benefit plan" as defined by 29 U.S.C. § 1002(3). *Id.* ¶¶ 8, 12. Aetna is the insurer and underwriter of the Plan and pays the benefits for all approved claims. *Id.* ¶ 17.

Sliwinski worked for Zogenix until April 2015, when physical disabilities rendered her unable to perform the duties of the job. *Id.* ¶ 10. Sliwinski then applied for long term disability under the Plan. *Id.* ¶ 30. On October 22, 2015, Aetna approved the claim and began paying long-term disability benefits. *Id.* ¶¶ 30–32. In January 2016, Plaintiff attempted to return to work on a part-time basis. After only a few days, she found she was unable to perform her duties and ceased working entirely on January 20, 2016. *Id.* ¶ 11.

Aetna terminated Sliwinski's benefits on March 25, 2016 reasoning that she had returned to work. *Id.* ¶ 32. Sliwinski informed Aetna that while she had attempted to return to work, her attempt lasted only a few days. *Id.* Sliwinski appealed the termination pursuant to the policy, but Aetna denied the appeal. *Id.* ¶¶ 34–40. Sliwinski then asked Aetna to allow another appeal and submitted records as evidence of her disability, but Aetna informed her that it would not grant the request and considered the decision final. *Id.* ¶¶ 43–49.

II. **Procedural History**

This suit followed. As set forth above, Sliwinski's second claim alleges breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) and seeks enforcement through 29 U.S.C. § 1132(a)(3), which permits a civil action by a participant "to obtain other appropriate equitable

relief." Under this claim, Sliwinski seeks "equitable relief for the separate and distinct harms she suffered from Aetna's breaches of its fiduciary duty." Compl. ¶ 91, ECF No. 1. Sliwinski argues "it would be unjust for Aetna to retain the profits it received at Sliwinski's expense without commensurate compensation to her." *Id.* ¶ 90. Among the remedies Sliwinski seeks as equitable relief are surcharge, disgorgement, an accounting of profits generated as a result of the withheld benefits, unjust enrichment, injunctive relief, and restitution. *Id.* ¶¶ 92–97.

Defendant's motion asks the Court to dismiss the second claim as duplicative of the first claim. Defendant argues that when a plaintiff can recover under § 1132(a)(1)(B), she cannot obtain additional relief under § 1132(a)(3). Plaintiff counters that Supreme Court precedent, in fact, permits her to seek relief under both causes of action. Alternatively, she argues that the second claim should not be dismissed because the Federal Rules of Civil Procedure permit her to plead in the alternative.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an

entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

Collectively, the two causes of action at issue in this case provide:

(a) Persons empowered to bring a civil action
A civil action may be brought--

(1) by a participant or beneficiary--

> . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . .

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a).

In *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), the Supreme Court defined the roles and limits of these two causes of action in providing relief to an ERISA plaintiff. The Court stated that § 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . ." On the other hand, § 1132(a)(3) acts as a "catchall" provision or "safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Id.* However, the Court cautioned, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515. The Tenth Circuit has expressly reiterated this restriction on equitable relief: "[A] claim under 29 U.S.C. [§] 1132(a)(3) is

improper when the [plaintiff] . . . states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B), a provision which provides adequate relief for [the] alleged" injury. *Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 827 (10th Cir. 2003).

On its face, Sliwinski's second claim for breach of fiduciary duty should be dismissed as duplicative pursuant to *Varity* and *Lefler*. However, she argues dismissal is inappropriate for two reasons. First, she asserts the Supreme Court decision of *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) fundamentally changed the restrictions on equitable relief *Varity* imposed. Pl.'s Resp. 6–8, ECF No. 16. Second, she argues dismissal would be premature because the Federal Rules of Civil Procedure permit pleading in the alternative. *Id.* at 12–13.

## I. *Amara* and Its Effect on *Varity*

In *Amara*, the Supreme Court addressed a claim by a pension class against a plan administrator-employer where the class alleged the administrator failed to provide proper notice of changes to the pension plan. 563 U.S. at 424. The employer changed the retirement plan it offered its employees from a plan that provided an employee an annuity upon his or her retirement to a plan that gave the employee a "lump sum" retirement account, and the employee could invest the sum as he or she wished. *Id.* at 426–27. The district court found that the employer's representations about the changes in the plan "were significantly incomplete and misled its employees." *Id.* at 428. As a remedy for the violations, the district court reformed the plan to compensate the injured employees. *Id.* at 433–34. The district court used § 1132(a)(1)(B) as the legal authority for that remedy. *Id.* at 434.

The Supreme Court reversed as to the source of the legal authority for reforming the plan. The Court ruled that § 1132(a)(1)(B), which "speaks of '*enforc[ing]*' the 'terms of the plan,' not

of *changing* them," does not permit a court to alter the terms of an ERISA plan. *Id.* at 436. Altering the plan, the Court noted, "seems less like the simple enforcement of a contract as written and more like an equitable remedy." *Id.* Instead, the Court stated that the remedies the district court ordered were "within the scope of the term 'appropriate equitable relief' in § [1132](a)(3)." *Id.* at 442.

Importantly, with respect to the present motion, the plaintiffs in *Amara* did not have a cognizable claim under § 1132(a)(1)(B). *Id.* at 438. Thus, *Amara* does not stand for the proposition that the case "clarifies that plan beneficiaries may simultaneously assert claims under § [1132](a)(1)(B) for denial of benefits and under § [1132](a)(3) to recover further equitable relief for breaches of fiduciary duties," as Plaintiff argues. Pl.'s Resp. 7.

The cases to which Sliwinski cites similarly do not support the proposition that simultaneous claims may be brought under § 1132(a)(1)(B) and § 1132(a)(3). Instead, each stays faithful to *Varity*. Plaintiff cites to *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711 (8th Cir. 2014), in which an employee-beneficiary died at an early age and his father sought to recover on his employer-provided life insurance policy. *Id.* at 713. Initially, the employee had declined the life insurance coverage, but, several years later, reconsidered and decided to enroll in the plan. *Id.* at 713–14. Because he was enrolling at this later date, the policy required him to provide "evidence of insurability" which was satisfied, at least in part, by completing a "Statement of Health" form. *Id.* at 714–15. When the father tried to collect the benefits, the insurer denied the claim, because the employee had failed to satisfy the "evidence of insurability" requirement. *Id.* at 714. However, during the dispute, the parties were uncertain whether the employee was ever notified of the "evidence of insurability" requirement, and the policy did not

7

define the term. *Id.* at 715–16. Further, two hundred other employees had not submitted a "Statement of Health" form, or at least, the insurer was unable to produce them. *Id.* at 715. The Eighth Circuit permitted the father to seek enforcement of the plan under § 1132(a)(1)(B) and to pursue other equitable remedies under § 1132(a)(3). *Id.* at 719–24. As its reasoning, the court stated:

> We do not read *Varity* . . . to stand for the proposition that [a plaintiff] may only plead one cause of action to seek recovery [for an ERISA violation]. Rather, we conclude those cases prohibit duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3).

*Id.* at 726. The court noted the father "present[ed] two alternative—as opposed to duplicative—theories of liability . . . ." *Id.* The court reasoned that both claims were proper at the pleading stage, because

> [u]nder § 1132(a)(1)(B), [the plaintiff] is arguing that the insurance policy was valid and that [the employee's] failure to provide evidence of insurability does not alter the validity of the policy. In the alternative, under § 1132(a)(3), [the plaintiff] is arguing that if [the employee's] policy was never validly approved and therefore did not go into effect due to the missing Statement of Health form, [the insurers] are still liable to him due to fiduciary misconduct. These arguments assert different theories of liability.

*Id.* at 727–28. Thus *Silva* permits alternative pleading while still adhering to *Varity*'s prohibition on duplicative recovery. It does not support Plaintiff's interpretation of *Amara*.

Plaintiff also cites to *Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948 (9th Cir. 2016). There, Liberty Mutual bid to acquire (and ultimately succeeded in acquiring) an insolvent company and, as part of its bid, made representations to the company's employees that

8

their time employed for the insolvent company would credit toward Liberty Mutual's retirement benefits plan. *Id.* at 952–55. Later, when Liberty Mutual denied certain applications for retirement benefits by the defunct company's employees, the affected employees filed suit and brought claims for relief under both § 1132(a)(1)(B) and § 1132(a)(3). *Id.* at 955–56. The Ninth Circuit allowed both claims to continue also reasoning that proceeding under both claims did not violate *Varity*'s prohibition on double recoveries. "Here, [the plaintiffs] seek the payment of benefits under § 1132(a)(1)(B), *but if that fails*, [the plaintiffs] seek an equitable remedy for the breach of fiduciary duty to disclose under § 1132(a)(3)." *Id.* at 962 (emphasis added). Thus, should the *Moyle* plaintiffs succeed under their § 1132(a)(1)(B) claim, no equitable remedy would be appropriate under § 1132(a)(3). *Moyle* does not permit a plaintiff to recover under both statutes.

Plaintiff additionally cites to *McCravy v. Metropolitan Life Insurance Co.*, 690 F.3d 176 (4th Cir. 2012) and *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir. 2013). These cases similarly illustrate that § 1132(a)(3) permits a court to award a plaintiff equitable remedies for breach of fiduciary duties. However, neither supports the proposition that a plaintiff is entitled to additional recovery under § 1132(a)(3) when § 1132(a)(1)(B) adequately remedies a plaintiff's claim.

In *McCravy*, an ERISA plaintiff sought to recover benefits for the death of her dependent daughter whom the plaintiff insured under her life and accidental death insurance. 690 F.3d at 177–178. However, after the daughter's untimely death, the insurer discovered the daughter was age 25, and the policy only permitted coverage of dependant children until a maximum of age 24. *Id.* at 178. When the plaintiff sought to collect under the policy, the insurer attempted to return

9

the premiums it had continued to accept even after the daughter became ineligible for coverage and, otherwise, denied the claim. *Id.* The plaintiff brought suit seeking equitable remedies under § 1132(a)(3). The Fourth Circuit recounted *Amara* stating the case "stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)." *Id.* at 181. Importantly, the *McCravy* plaintiff did not have a cognizable claim under § 1132(a)(1)(B). The parties agreed the daughter was not covered under the life insurance policy. *Id.* at 178. Therefore, the plaintiff could not receive an adequate recovery under § 1132(a)(1)(B). While *McCravy* states that equitable remedies providing a monetary award are available under § 1132(a)(3), it does not state that a plaintiff may simultaneously recover under § 1132(a)(1)(B) and § 1132(a)(3) for the same injury.

*Gearlds* is consistent with this proposition. There, an ERISA plaintiff had agreed to take early retirement based on the employer's representations that his retirement plan would entitle him to medical benefits. *Gearlds*, 709 F.3d at 449. Years later, when the employer informed him that it was discontinuing his medical benefits because it had miscalculated the plaintiff's years earned towards coverage, the employee brought an action under § 1132(a)(3) seeking various equitable remedies. *Id.* at 449–50. Like the Fourth Circuit in *McGravy*, the Fifth Circuit here recognized that *Amara* stated "'an award of make whole relief' . . . [i]s within the scope of 'appropriate equitable relief' for purposes of § [1132](a)(3)." *Id.* at 451. However, also like the plaintiff in *McCravy*, the plaintiff in *Gearlds* had no cognizable claim under § 1132(a)(1)(B). It was not necessary for the court to address whether a plaintiff may simultaneously recover under § 1132(a)(1)(B) and § 1132(a)(3) because he had no cognizable

claim under § 1132(a)(1)(B).

In contrast to these cases, in *Rochow v. Life Insurance Co. of North America*, 780 F.3d 364 (6th Cir.), *cert denied*, 163 S. Ct. 480 (2015), the Sixth Circuit addressed a suit where a plaintiff sought enforcement of a benefits plan under § 1132(a)(1)(B) and additional monetary awards as an equitable remedy under § 1132(a)(3). There, the district court granted summary judgment to the plaintiff on the § 1132(a)(1)(B) claim for wrongful denial of benefits. *Id.* at 367. After that decision was affirmed on appeal, the district court granted the plaintiff a substantial monetary award as an "equitable accounting of profits and disgorgement of the same." *Id.* at 368. An en banc rehearing of the Sixth Circuit overturned the award of equitable damages under § 1132(a)(3). *Id.* at 366. The Sixth Circuit identified the single issue before it: "Is [a plaintiff] entitled to recover under both . . . § [1132](a)(1)(B) and § [1132](a)(3) for [an ERISA provider's] arbitrary and capricious denial of long-term disability benefits?" *Id.* at 370. The court recognized that, in *Varity*, the Supreme Court explained that "§ [1132](a)(3) 'functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy.'" *Id.* at 371 (quoting *Varity*, 516 U.S. at 513). However, the court also recognized that *Varity* states "where Congress elsewhere provided *adequate* relief for a beneficiary's *injury*, there will likely be *no need* for further equitable relief, in which case such relief normally would *not be appropriate*." *Id.* (quoting *Varity*, 516 U.S. at 515). "In other words, a claimant cannot pursue a breach-of-fiduciary-duty claim under § [1132](a)(3) based solely on an arbitrary and capricious denial of benefits where the § [1132](a)(1)(B) remedy is adequate to make the claimant whole." *Id.* Of additional concern to the court, "[i]f an arbitrary and capricious denial of benefits implicated a breach of fiduciary duty

11

entitling the claimant to disgorgement of the defendant's profits in addition to recovery of benefits, then equitable relief would be potentially available whenever a benefits denial is held to be arbitrary or capricious." *Id.* at 372. A plaintiff "can pursue a breach-of-fiduciary-duty claim under § [1132](a)(3) . . . only where the breach of fiduciary duty claim is based on an *injury separate and distinct* from the denial of benefits or where the remedy afforded by Congress under § [1132](a)(1)(B) is otherwise shown to be inadequate." *Id.*

Here, Aetna concedes that Sliwinski states a cognizable claim for enforcement of benefits due under § 1132(a)(1)(B). Def.'s Mot. 13, ECF No. 10. An examination of the complaint reveals that the only injury Sliwinski alleges is a wrongful denial of benefits. Sliwinski states that but for Aetna's alleged breach of fiduciary duties, Sliwinski would not have "suffered other economic harms" such as relying on "dwindling . . . savings accounts" and "increased reliance on credit cards." Pl.'s Resp. 7, ECF No. 16. Thus she is not alleging an injury *separate and distinct* from the denial of benefits. *See Rochow*, 780 F.3d at 372. Plaintiff's alleged injuries arose because of the denial. Plaintiff argues "it would be unjust for Aetna to retain the profits it received at Sliwinski's expense without commensurate compensation to her." Compl. ¶ 90, ECF No. 1. However, "ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Rochow*, 780 F.3d at 371. This is a case "where Congress [has] elsewhere provided adequate relief for [the] beneficiary's injury . . . ." *Varity*, 516 U.S. at 515. Thus further equitable relief "would not be 'appropriate.'" *Id.*

## II. Alternative Pleading

Sliwinski argues that dismissal is not appropriate because she is allowed to plead in the

alternative. Pl.'s Resp. 12, ECF No. 16. The Tenth Circuit has stated that "consideration of a claim under 29 U.S.C. [§] 1132(a)(3) is improper when [a plaintiff] . . . states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B) . . . ." *Lefler*, 72 F. App'x at 827. While a plaintiff is permitted to plead in the alternative, such pleading is only appropriate under § 1132(a)(3) when the plaintiff pleads "alternative" theories of recovery. *Holbrooks v. Sun Life Assurance Co. of Can.*, No. 11-1383-JTM, 2012 WL 2449850, at *1 (D. Kan. June 26, 2012); *Fulghum v. Embarq Corp.*, No. 07-2602-KHV, 2008 WL 5109781, at *10 n.15 (D. Kan. Dec. 2, 2008) (permitting a claim under § 1132(a)(3) where it sought "alternative equitable relief . . . if it turns out [the plaintiffs] do not have a vested right to benefits"); *Circle v. W. Conference of Teamsters Pension Tr.*, No. 3:17-cv-00313-YY, 2017 WL 4102490, at *3 (D. Ore. Aug. 31, 2017) ("[A]lternative pleading is only permissible where the relief sought under each alternative claim is distinct."); *Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1047 (N.D. Cal. 2016) (stating a claim under § 1132(a)(3) is cognizable when it seeks relief distinct from a § 1132(a)(1)(B) claim). Section 1132(a)(3) "is construed to prevent 'plaintiffs [from] repackaging their failure-to-pay claims, i.e. their claims under [§ 1132](a)(1)(B), as claims for breach of fiduciary duty.'" *Holbrooks*, 2012 WL 2449850, at *1 (emphasis omitted) (quoting *Fulghum*, 2008 WL 5109781, at *10).

Sliwinski's complaint makes clear that the only damages she has incurred are a result of the alleged wrongful denial of benefits. If that wrongful denial claim fails, she has no alternative grounds for recovery. Thus, the relief she seeks under both claims is identical. Here, her second claim represents "the sort of repackaging disfavored in *Lefler* . . . ." *Holbrooks*, 2012 WL 2449850, at *2. Dismissal of Sliwinski's second claim is appropriate

because it does not seek relief distinct from her first claim.[1]

## **CONCLUSION**

Here, Aetna has demonstrated that Sliwinski's second claim for relief is duplicative of the first. Accordingly, the Court respectfully RECOMMENDS that Defendant's Partial Motion to Dismiss [filed July 17, 2017; ECF No. 10] the Complaint be **GRANTED**.[2]

Respectfully submitted this 16th day of October, 2017, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[1] Plaintiff's response brief asks the Court for leave to amend the complaint should the Court grant Defendant's motion to dismiss her second claim. Pl.'s Resp. 5. The District of Colorado's Local Rules do not permit such a request in a response brief. D.C. Colo. LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).